**Clarence J. COLEMAN, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**No. 3808.**

District of Columbia Court of Appeals.

Argued March 14, 1966.

Decided May 12, 1966.

Claire O. Ducker, Sr., Washington, D. C., with whom Thomas J. Ahern, Sr., Washington, D. C., was on the brief, for appellant.

Robert Kenly Webster, Asst. U. S. Atty., argued for appellee. David G. Bress, U. S. Atty., and Frank Q. Nebeker, Charles L. Owen, and Allan M. Palmer, Asst. U. S. Attys., were on the brief for appellee. John C. Conliff, Jr., Asst. U. S. Atty., also entered an appearance for appellee.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

QUINN, Associate Judge.

By information appellant was charged with unlawful possession of a pistol after conviction of a felony in violation of Code 1961, § 22–3203.[1]

A pretrial motion to suppress the pistol was granted, but nevertheless appellant was convicted of the offense after a nonjury trial. This appeal ensued.

At the trial Detective Robert E. Smythe of the Metropolitan Police Department

---

1. § 22–3203 provides: "No person shall own or keep a pistol, or have a pistol in his possession or under his control, within the District of Columbia, if— * * * (2) he has been convicted in the District of Columbia or elsewhere of a felony; * * *."

testified that at approximately 3:00 A.M. on March 27, 1965, he was called to Casualty Hospital to investigate a shooting. There he attempted to interview the victim, one Smith, but was unable to do so because the latter was undergoing medical treatment. The detective then talked to the persons who had accompanied Smith to the hospital and was told by one George Bates that appellant had been playing with the gun which had accidentally discharged. Appellant was then confronted with Bates who told him that he had revealed the truth about the shooting. Thereupon appellant replied: "Yes, that's true. I didn't mean for the gun to go off. I was just playing with it and it went off accidentally." When asked why he had not told the story initially, appellant stated that he was afraid to do so because he was on parole.

Detective Smythe testified that he did not arrest appellant that evening but instead gave him a summons to appear at the United States Attorney's office for a hearing because he was "fairly convinced" that the shooting was accidental. He did, however, take appellant in a police cruiser to the latter's house in order to retrieve the gun. This action resulted in the suppression order.

The government also put George Bates on the witness stand but he refused to testify, claiming a Fifth Amendment privilege. The trial court, however, asserted that he would probably not be prosecuted for any crime by the District of Columbia and ordered him to testify. Bates then stated that he was watching television in appellant's house along with appellant, Smith and another person when he heard a shot. Smith exclaimed that he had been shot and Bates saw a wound in his chest. The three men then took Smith to the hospital.

The government introduced into evidence a copy of a prior felony conviction of appellant's, and the court subsequently found him guilty as charged.

Appellant's first contention is that evidence which had been suppressed before trial could not be used against him. While his position is certainly correct, no such evidence was introduced at his trial. The suppression order went only to the pistol which was wrongfully seized by the police; the pistol was not, nor could it have been, introduced into evidence. But this does not mean that appellant's possession of the gun could not have been established by independent means. As the trial judge succinctly put it:

> "There is no rule that says that they have to have the pistol here in order to prove unlawful possession of the pistol, any more than if you steal a strawberry shortcake and eat the shortcake while you're running from the shop. That will not relieve you from the charge of larceny because they don't have to produce the shortcake. You've got the same situation here."

Appellant next asserts that the trial court erred in overruling the Fifth Amendment claim of the witness Bates. Although the court might have overstepped its powers in so doing, appellant has no standing to challenge the court's ruling. As the United States Court of Appeals for the Ninth Circuit said in Bowman v. United States, 350 F.2d 913, 915–916 (1965):

> " * * * It has long been settled that the privilege against self-incrimination is personal to the witness. [Citations omitted.] It is equally well settled that the witness can waive the privilege. Thus if [the witnesses] had each failed to assert the privilege, this would be nothing about which Bowman would be entitled to complain.

> "It makes no difference, we think, that the two witnesses did attempt to assert the privilege and that the court erroneously overruled their claim of privilege. Where the witness is not the party, the party may not claim the privilege nor take advantage of an error of the court

in overruling it. On this point the authorities are practically unanimous. [Citations omitted.]"

■ Appellant's principal contention is that the admission which he made at the hospital should not have been allowed into evidence since he had not been advised of his rights and did not have the assistance of counsel. He cites Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed. 2d 246 (1964), to support his argument. But the rulings of these cases do not go so far as appellant would have them. Here the police officer was merely investigating the possibility that a crime might have been committed. Appellant had not been taken into custody and the process had not crossed the threshold from the investigatory to the accusatory. In fact, until appellant stated that he was on parole, the officer did not believe that a crime had been committed. The language of the United States Court of Appeals for the District of Columbia in Pennewell v. United States, 353 F.2d 870, 872 (1965), is equally applicable here.

"Escobedo plainly does not require counsel in a case like this where non-coercive questioning was carried on in the course of a routine police investigation prior to arrest, or the establishment of probable cause for an arrest, and the police had not moved from 'investigation' into the possible existence of a crime to a purposeful interrogation of appellant, as the accused, to 'get him' to confess his guilt or make incriminating statements * * *."

■ Finally, appellant argues that even if his admission was correctly considered by the trial court, there was insufficient independent corroborative evidence which would tend to establish the trustworthiness of the statement within the rule established by the Supreme Court in Opper v. United States, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954), and Smith v. United States, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192 (1954). We cannot agree. Appellant's admission was amply corroborated by Bates' testimony which placed appellant in the room with Smith when the latter was shot, and by Detective Smythe's testimony that Bates had told him that appellant accidentally shot Smith.

Affirmed.