**UNITED STATES of America**

v.

**John PRATER, Appellant.**

**No. 71–1432.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 29, 1972.

Decided March 30, 1972.

Mr. John Z. Noyes, Washington, D. C. (appointed by this court) for appellant.

Mrs. Ann S. DuRoss, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., at the time the brief was filed, John A. Terry and Edwin A. Williams, Asst. U. S. Attys., were on the brief, for appellee. Mr. Harold H. Titus, Jr., U. S. Atty., also entered an appearance for appellee.

Before FAHY, Senior Circuit Judge, and TAMM and MacKINNON, Circuit Judges.

MacKINNON, Circuit Judge:

Appellant was convicted by a jury on two counts of (1) assault with intent to commit robbery while armed with a dangerous weapon (D.C.Code §§ 22–501, –3202) and on two counts of (2) assault with a dangerous weapon (D.C. Code § 22–502). Concurrent sentences of seven to twenty-one years and three to nine years respectively were adjudged on each of the two types of offenses. Appellant raises two points as a basis for setting aside his convictions which we find to be inadequate to accomplish that objective. We accordingly affirm.

I

The first attack made by appellant's counsel is that the evidence was

insufficient to support the implicit finding of the verdict that appellant aided and abetted the offenses. In this argument it is contended that "Prater was merely present and did not participate in the assault." There was evidence at trial, however, to the contrary. It is disclosed that the two victims (Robert and Laurie), while returning from a high school prom about 2:45 A.M. on June 3, 1970, saw appellant and a taller man standing on a corner by a bus stop. These two men approached the victims and the taller man pulled out a gun and said, "This is a stickup" (Tr. 9, 22–24, 157). He then ordered the victims to walk around the corner (Tr. 9, 24, 157); they complied and appellant followed behind Robert while the taller man walked behind Laurie (Tr. 9, 172). Both victims and two police officers who observed the parties testified that appellant and the gunman walked directly behind the victims. After the party got around the corner the taller man said, "I ought to bust a cap in his ass" (Tr. 9). Appellant then stated, "Go on, bust a cap in his ass and get it over with" (Tr. 24).[1] Appellant then, according to the testimony, reached into Robert's back pocket, but his wallet was so tightly fitted into his pocket that appellant could not remove it (Tr. 9–10). A police car then came by and while the taller man escaped with the gun, appellant was arrested. The police frisked appellant at the arrest scene and found a black bush comb in his right rear pocket (Tr. 166) and later found $105.00 among his personal belongings (Tr. 169, 174). Robert realized the next morning that a bush comb he had had in his back pocket was missing (Tr. 9, 10, 12).

Appellant testified that he was going to the corner to catch a bus when he saw another man and the victims arguing (Tr. 183); that he did not know or speak to any of them (Tr. 184–185); that he saw no one with a gun (Tr. 184); that the three began running down the street (Tr. 184), and stopped by a police car; that then he (appellant) went over to the police car "out of curiosity" (Tr. 184, 187) and the police then searched him.

From the foregoing it is obvious that the evidence was sufficient to prove appellant guilty of aiding and abetting [2] the offenses if the jury believed the evidence introduced by the Government. Appellant argues that because he had $105.00 on his person at the time it is "inherently incredible" to believe that he would engage in a holdup and steal a comb. We find nothing inherently incredible about appellant's actions under such circumstances. The limits of individual desires for money are not standardized and the placement of the comb in his pocket could well have been a mere reflex act. The question as to the weight of the evidence was solely for the jury, and by their verdict they indicated they believed the prosecution witness and disbelieved appellant. Since that conclusion is based on substantial evidence, we see no basis in the record to disturb the verdict on this ground.

---

1. Appellant contends that the victim was unsure who made the statement and erroneously attributed the single statement to both men; but the record shows it to be two *different* statements, each made by one of the robbers. The argument is largely irrelevant, in any event, because there is no doubt that one of the robbers made the statement and there is substantial additional evidence to prove that appellant aided and abetted the crime by walking behind the victims and trying to remove Robert's wallet from his pocket.

2. D.C.Code § 22–105 (1967) provided:
   In prosecutions for any criminal offense all persons advising, inciting, or conniving at the offense, or aiding or abetting the principal offender, shall be charged as principals and not as accessories, the intent of this section being that as to all accessories before the fact the law heretofore applicable in cases of misdemeanor only shall apply to all crimes, whatever the punishment may be. (Mar. 3, 1901, 31 Stat. 1337)

## II

Secondly, appellant contends that there was insufficient evidence to prove that on June 3, 1970 he aided and abetted the assault with intent to rob "while armed with a dangerous weapon, that is, a pistol." In charging this offense the indictment states:

On or about June 3, 1970 . . . John Prater, *while armed with a dangerous weapon, that is, a pistol,* feloniously and willfully assaulted Robert . . . by force and violence and against resistance and by putting in fear, with intent to steal and take valuable goods and property from the person and from the immediate actual possession of said Robert . . . . (Emphasis added).

This indictment charges violations of D.C.Code § 22–501 [3] and § 22–3202.[4]

Appellant claims the evidence is insufficient to prove that he was "armed with a dangerous weapon, that is, a pistol." [5] In support of this claim he points out that the taller man was never apprehended, that the pistol was never recovered and that no shots were fired from the pistol. From this base he speculates that the alleged pistol might have been a toy pistol, or an imitation pistol, or that in the event it were a real pistol that it might have been unworkable. He thus contends there is insufficient proof that the pistol was "a dangerous weapon."

■ Since this offense occurred on June 3, 1970, the statute as amended on December 27, 1967 is applicable.[6]

3. D.C.Code § 22–501 (Supp. IV, 1971) provided:
   Every person convicted of any assault with intent to kill or to commit rape, or to commit robbery, or mingling poison with food, drink, or medicine with intent to kill, or wilfully poisoning any well, spring, or cistern of water, shall be sentenced to imprisonment for not less than two years or not more than fifteen years. (Mar. 3, 1901, 31 Stat. 1321, ch. 854, § 803; Dec. 27, 1967, Pub.L. 90–226, § 601, title VI, 81 Stat. 736)

4. On the date of the instant offense, D.C. Code § 22–3202 provided:
   If any person shall commit a crime of violence in the District of Columbia when armed with or having readily available any pistol or other firearm, or other dangerous or deadly weapon, including but not limited to, sawed-off shotgun, shotgun, machinegun, rifle, dirk, bowie knife, butcher knife, switchblade knife, razor, blackjack, billy, metallic or other false knuckles, he may in addition to the punishment provided for the crime be punished by imprisonment for an indeterminate number of years up to life as determined by the court. If a person is convicted more than once of having committed a crime of violence in the District of Columbia when armed with or having readily available any pistol or other firearm, or other dangerous or deadly weapon, including but not limited to, sawed-off

shotgun, shotgun, machinegun, rifle, dirk, bowie knife, butcher knife, switchblade knife, razor, blackjack, billy, metallic or other false knuckles, then, notwithstanding any other provision of law, the court shall not suspend his sentence or give him a probationary sentence. (July 8, 1932, 47 Stat. 650, ch. 465, § 2; Dec. 27, 1967, Pub.L. 90–226, § 605, title VI, 81 Stat. 737) D.C.Code § 22–3201 (Supp. IV, 1971) defined "crime of violence" as follows:
   "Crime of violence," as used in this chapter, means any of the following crimes, or an attempt to commit any of the same, namely: Murder, manslaughter, rape, mayhem, maliciously disfiguring another, abduction, kidnaping, burglary, robbery, housebreaking, larceny, any assault with intent to kill, commit rape, or robbery, assault with a dangerous weapon, or assault with intent to commit any offense punishable by imprisonment in the penitentiary. (July 8, 1932, 47 Stat. 650, ch. 465, § 1; Dec. 27, 1967, Pub.L. 90–226, § 501, title V, 81 Stat. 736)

5. Appellant (as an aider and abettor) is charged in the indictment as a principal pursuant to D.C.Code § 22–105 (1967), *supra* note 2.

6. *See* note 4, *supra.* Under its provisions, because appellant had been previously convicted of housebreaking, the court was authorized to sentence him to additional punishment over that provided for the unaggravated offense. The statute was

It refers to

> any pistol or other firearm, or other dangerous or deadly weapon, including but not limited to, sawed-off shotgun, shotgun, machinegun, rifle, dirk, bowie knife, butcher knife, switchblade knife, razor, blackjack, billy, metallic or other false knuckles . . . . (81 Stat. 737)

The enumerated articles indicate that Congress intended to include within the statutory concept of a "dangerous weapon" any article or weapon that was able or likely to produce injury or capable of producing death. To this end the statute specifically included articles that could be used to reinforce a personal assault such as brass (metallic) knuckles and blackjacks. A pistol, even though non-operable, is a weapon that would come within the statutory requirement of being "dangerous" since it is capable of being used—and one of its frequent uses in crime is—almost as a blackjack to pistolwhip a victim.

■ This brings us to the testimony concerning the gun which we must evaluate to determine whether there was sufficient testimony for the jury to find that it was "dangerous." That it was a "gun" was testified to by the policemen and the victims (Tr. 9, 11, 21–24, 157, 162, 165, 172). In this connection we conclude from the testimony concerning the robbers' statements that they might "bust a cap in his ass," that the jury would be justified in inferring that the gun was loaded and that if they had so desired they could have shot the victims. Such statement was a plain threat to shoot the victims and Robert so interpreted it (Tr. 9, 24).

A similar factual situation existed in Wagner v. United States, 264 F.2d 524 (9th Cir. 1959) where the defendant in a postal robbery was charged with putting lives in jeopardy by the use of a dangerous weapon. In the opinion, Judge Hamley remarked:

> There was no direct evidence that the gun was loaded. When, however, a robber displays a gun to back up his demands, he wants his victim to believe that it is loaded, and the fact-finder may fairly infer that it was. Here there was a voiced threat by one of the robbers that Martin would be shot if he did not keep his hand away from his coat pocket.

264 F.2d at 530 n. 8.

Wheeler v. United States, 317 F.2d 615, 618 (8th Cir. 1963) is to the same effect. It involved an offense under the Federal Bank Robbery statute where the accused was charged with putting the life of a victim in jeopardy "by use of a dangerous weapon and device." The opinion by Judge Stephenson held that the evidence was sufficient to prove that the gun was in fact loaded where there was testimony that the accused "pulled a gun," said he was "not kidding," and later told them to not tell anyone about the robbery "until I am gone . . . we don't want no one to get shot."

The evidence concerning the gun and whether it constitutes a dangerous weapon as here alleged must be viewed in the light of all the surrounding circumstances. United States v. Daniels, 141 U.S.App.D.C. 223, 226–227, 437 F.2d 656, 659–660 (1970) and United States v. Curtis, 138 U.S.App.D.C. 360, 363, 427 F.2d 630, 633 (1970) are other cases where defendants were found to have been properly convicted of assault with a dangerous weapon even though the gun itself was never recovered. When we so consider the facts we conclude that the jury were justified in finding that the offense was committed "while armed with a dangerous weapon, that is, a pistol," as alleged in the indictment. This finding is supported by the evidence that the gun was a handgun (Tr. 9–10, 22, 24) that could be used dangerously as a bludgeon to inflict

subsequently amended on July 29, 1970, Pub.L. 91–358, § 205, title II, 84 Stat.

600, D.C.Code § 22–3202 (Supp. IV, 1971).

physical injury and also that it was loaded and could be used dangerously as a firearm.

Affirmed.