Calvin C. ANDERSON, Appellant,

v.

UNITED STATES, Appellee.

No. 7245.

District of Columbia Court of Appeals.

Argued Oct. 23, 1973.

Decided Oct. 23, 1974.

**808**

Kurt Shaffert, New York City, court appointed, for appellant.

Richard A. Graham, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., and John A. Terry and Charles J. Harkins, Asst. U. S. Attys., were on the brief, for appellee.

Before FICKLING and HARRIS, Associate Judges, and HOOD, Chief Judge, Retired.

HARRIS, Associate Judge:

Appellant was found guilty by a jury of carrying a pistol without a license. D.C. Code 1973, § 22–3204. He was sentenced to a term of 40 to 120 months' imprisonment under the repeat offender provisions of that statute. Appellant challenges: (1) the supposed denial of a motion to suppress the pistol as evidence; (2) the fact that the jury made no finding as to the prior felony convictions of appellant which formed the basis for a greater sentence; and (3) the fact that a police officer testified that the pistol was stolen. We find no error requiring reversal, and affirm.

I

Two Metropolitan Police Department officers responded to an early morning radio run for a man with a gun at 14th and Chapin Streets, N.W. Upon arrival at that location, they saw approximately 30 to 40 people in the area. The officers got out of their car and began walking towards the group. As they did, appellant and a companion started across the street towards the officers. Both officers immediately noticed the awkward position of appellant's arms. His left hand was inside his jacket with his "elbow crooked as if he was holding something under his jacket." Officer Kenneth Noseck noticed that appellant's "right hand, which was inside the coat pocket, protruded somewhat from the coat pocket. Down at the base of the pocket, there was a definite outline of an object pushing down." [1]

As the officers and appellant approached each other, Officer Noseck asked appellant to take his hand out of his pocket. The officer testified: "Mr. Anderson stopped right in his tracks, immediately, and just looked at me and a look of almost panic, if you can imagine, it was there. He was stopped, and it was what I would call panic in his eyes." The other officer, Stephen

---

1. Although these events took place at night, visibility was good, due to the high intensity lighting on 14th Street.

Comeau, also remarked at trial on appellant's facial expression, describing it as like "somebody getting caught with their hand in the cookie jar."

Officer Noseck again asked Anderson to take his hand out of his pocket, but appellant did not move. Suspecting that the object in appellant's pocket was a gun, Noseck reached for appellant's right pocket and hand. At the same time, Officer Comeau grabbed appellant's left arm. Comeau found an open bottle of beer under appellant's left arm; Noseck felt a pistol in his right pocket. Appellant had the loaded pistol in his hand, with his finger on the trigger guard. Officer Noseck took the pistol and placed appellant under arrest.[2]

## II

Few concepts of procedure are as clearly spelled out as the requirement that a motion to suppress evidence must be filed before trial. D.C.Code 1973, § 23–104(a)(2) and Superior Court Criminal Rule 12(b)(3) both require the pretrial filing of a suppression motion "unless opportunity therefor did not exist or the defendant was not aware of the grounds" for the motion. Superior Court Criminal Rule 47–I(c) provides that virtually all motions in criminal cases "shall be filed within 10 days of arraignment or entry of appearance of counsel, whichever date is later, unless otherwise provided by the court."

This case was handled by two trial court judges on successive days. It reached the first judge on January 31, 1973. Appellant's trial counsel apparently had been led to believe that two witnesses would support his client's contention that the pistol was lying in the street. When those witnesses did not appear, defense counsel asked for a continuance, which was denied. The following colloquy then occurred:

[DEFENSE COUNSEL]: My client wishes to have a suppression motion heard in this case.

THE COURT: After this case has been in for so long at this hour, we are way past the time for that. If you thought this would have been a basis for suppression, you should have filed it, long before this.

[DEFENSE COUNSEL]: I thought it was inconsistent with the facts—defendant and witness—

THE COURT: Government ready [for trial]?

[GOVERNMENT COUNSEL]: Yes, your Honor.

THE COURT: I will finish the case I've got and start this one right after that.

The court should have permitted counsel to be heard as to whether there was a valid basis for excusing him from the normal requirement of filing a motion to suppress prior to trial. However, that shortcoming—which we stop short of labeling error—ultimately was proven harmless.

The first judge did not again reach the case. On the next morning, it was sent to a second judge for trial. The two supposed defense witnesses again failed to appear, and defense counsel again sought to move orally to suppress the pistol. While asking why it should rehear the request which had been denied the day before, the court did listen to counsel's explanation of why no motion had been filed timely in compliance with the statute and the rules. Counsel explained that since his anticipated defense had been that Anderson never possessed the gun, he had felt that it would be

---

2. Appellant testified at the trial. He said that he had been drinking at an establishment called the Black Nugget until about 1:30 a.m. He then walked out and saw the police drive up. At that moment, he "spotted a gun laying there" in the street, about 12 feet away. The jury rejected such testimony; we are obliged to view the evidence in the light most favorable to the government.

inconsistent to file a motion to suppress based on the assumption that the gun had been in appellant's pocket. When the two witnesses failed to show up, however, counsel felt he should switch defenses and move to suppress the gun (undoubtedly recognizing the unlikelihood of the jury's believing defendant's version of the episode).

■ After weighing the competing factors, the trial court denied the request for a suppression hearing. Although the ruling was couched in terms of refusing to rehear the motion which had been denied on the previous day as untimely, we believe the court independently concluded that the situation did not present an appropriate exception to § 23–104(a)(2) of the Code and Rule 12(b)(3).[3] We agree that the motion was untimely. Defense counsel did not claim that his motion was based upon newly-learned information. Rather, he acknowledged that his belated effort to move to suppress was a tactical response to the nonappearance of the two witnesses.

■ There is no bar to the pursuit of two inconsistent lines of defense. See Johnson v. United States, 138 U.S.App.D. C. 174, 179, 426 F.2d 651, 656 (1970), petition for cert. dismissed, 401 U.S. 846, 91 S.Ct. 1258, 28 L.Ed.2d 523 (1971); Whittaker v. United States, 108 U.S.App.D.C. 268, 269, 281 F.2d 631, 632 (1960). Had appellant filed a timely motion to suppress, the court would have held a hearing to determine whether the sequence of events leading up to the seizure of the pistol, as related by the officers, was consistent with the requirements of the Fourth Amendment. Appellant would not have been obliged to take the stand at the hearing;

his intended testimony that the gun was in the street would have shed no light on the legality of the officers' actions, as related by them.

While we are sensitive to the dilemma faced by defense counsel, cf. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L. Ed.2d 697 (1960), we do not believe that it gave rise to an exceptional situation within the contemplation of § 23–104(a)(2) and Rule 12(b)(3). See Smith v. United States, D.C.App., 295 A.2d 64 (1972), cert. denied, 411 U.S. 951, 93 S.Ct. 1932, 36 L. Ed.2d 414 (1973).[4] Even if appellant had acknowledged possession of the pistol as a step in seeking the pretrial suppression thereof, any testimony to such effect would have been inadmissible at trial. Simmons v. United States, 390 U.S. 377, 389–394, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); see Brown v. United States, 411 U.S. 223, 228, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973). Appellant had nothing to lose by moving to suppress, nor anything to gain by failing to do so. He was bound by the consequences of his trial counsel's tactical decision.

Numerous cases have analyzed the rationale behind the requirement that, absent exceptional circumstances, motions to suppress must be heard and decided prior to trial. Such a rule is necessary to preserve the orderly administration of criminal justice, since the government has a statutory right to a pretrial appeal from the trial court's granting of a motion to suppress. D.C.Code 1973, § 23–104; see Jones v. United States, supra, 362 U.S. at 264, 80 S.Ct. 725; Smith v. United States, supra, 295 A.2d at 65; Jenkins v. United States, D.C.App., 284 A.2d 460, 464 (1971); Bailey v. United States, D.C.App., 279 A.2d 508, 509–510 n. 2 (1971). We find no abuse of

---

3. The court stated: "I'm hard pressed to see your failure for filing the motion. The government's case would be the same regardless of your defendant. I don't see that there's any new matter." This court will find reversible error in the trial court's denial of a defendant's motion to suppress as untimely only where there has been "the most flagrant abuse of a defendant's rights". Nicks

v. United States, D.C.App., 273 A.2d 256, 258 (1971).

4. In Smith we said (id. 295 A.2d at 65 n. 2): [[T]he orderly administration of justice mandates that motions to suppress be heard pre-trial and that it is only in exceptional cases that such a motion should be entertained at trial. [Citations omitted.]

discretion in the court's disposition of the efforts to have a suppression hearing at the time of trial.

The foregoing disposes of this issue as we view it, but does not respond directly to the contentions made by appellant's present counsel. The principal thrust of appellant's argument before us is that a motion to suppress erroneously was denied. However, as we have noted, the actual ruling by the trial court was that a motion to suppress would not be heard. Since we find no reversible error in the rulings which were made, we do not decide whether a motion to suppress, if timely made and heard, should have been granted or denied.[5]

### III

■ For a first offender who is convicted of carrying a pistol without a license, the maximum period of incarceration is one year. D.C.Code 1973, §§ 22–3204, 22–3215. For one who previously has been convicted of carrying a pistol without a license in this jurisdiction, or convicted of any felony in any jurisdiction, the maximum imprisonment is 10 years. D.C.Code 1973, § 22–3204. Appellant was sentenced to from 40 to 120 months under

the repeat offender provision. He argues for the first time in this court that proof of his prior felony convictions was one of the elements of the crime, and that since the jury was not instructed to consider that element, his conviction was invalid. There is no merit to such a contention.

■■ Unquestionably a conviction may not stand unless the jury has considered all essential elements of the offense charged. *See, e. g.,* Belton v. United States, 127 U.S.App.D.C. 201, 205 n. 9, 382 F.2d 150, 154 n. 9 (1967). However, the matter of prior convictions is essentially a sentencing criterion, rather than an element of the offense. *See* Jackson v. United States, 95 U.S.App.D.C. 328, 330, 221 F.2d 883, 885 (1955). The trial court properly instructed the jury that "the question of possible punishment . . . is no concern of the jury".[6] No error, plain or otherwise, was committed by the trial court on this question.

### IV

■ When a defendant is charged with carrying a pistol without a license, the government must prove that the weapon was operable. Officer Comeau testified

---

5. At a break in the trial, the court invited a discussion at the bench as to the basis for defense counsel's claim of an unreasonable search and seizure. At the conclusion of a rather thorough airing of the opposing viewpoints, the court stated: "I agree with the government's position. If I reverse myself and rule during trial and ruled on your motion to suppress, I would deny it. * * * [A]t least at this stage of the procedure, the Court finds nothing wrong with the police conduct."

In a similar vein, we observe that the facts recited by the officers indicate a logical and reasonable series of responses to increasingly suspicious activity on the part of appellant. The officers had a report of a man with a gun. Appellant, who was holding his hands in an awkward and suspicious manner, "froze" when addressed by the police and refused to take his hand from his pocket. Officer Noseck, seeing the outline of a hard object at the bottom of appellant's pocket, reached out

and felt a gun. See, e. g., Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ; United States v. Lee, D.C.App., 271 A.2d 566 (1970) ; United States v. Dowling, D.C.App., 271 A.2d 406 (1970) ; Gaskins v. United States, D.C.App., 262 A.2d 810 (1970).

6. *See* Criminal Jury Instructions for the District of Columbia, No. 2.71 (2d ed. 1972). On cross-examination, appellant readily acknowledged his three prior felony convictions. *Cf.* United States v. Marshall, 142 U.S.App.D.C. 167, 440 F.2d 195, cert. denied, 400 U.S. 909, 91 S.Ct. 153, 27 L.Ed.2d 148 (1970) ; Jackson v. United States, *supra.* Further, the trial court gave the appropriate cautionary instruction that testimony of the prior convictions was admitted solely in connection with an evaluation of appellant's credibility. Once those convictions properly became a matter of record, they were available for the court's consideration in making its sentencing decision.

that he had been present when the pistol which was taken from appellant was test-fired, and that he had received a certificate from the range officer stating that it was operable. The range officer made an error, however. The name he typed on the certificate in the space marked "defendant" was not appellant's name, but rather was the name of the registered owner of the pistol. On redirect, the prosecutor asked Comeau to explain this discrepancy:

Q. Officer, showing you Defendant's Exhibit Number 3 for identification, and asking you to look at line number one where it says "defendant," in brackets, whose name is that?

A. The name typed there is James Murrell, and the last name is Reddon.

Q. Now, is that Mr. Anderson's name?

A. No it's not.

Q. Is that an alias Mr. Anderson gave you?

A. No sir.

Q. Who is Mr. Reddon, if you know?

A. Mr. Reddon is the owner of the Kenny's Steak, out on Colorado Avenue, and he's the owner.

Q. In other words, that gun was registered with the Metropolitan Police Department under the name of Mr. Reddon.

A. Yes.

Q. Serial Number AD—

A. When I handed the gun to the test firing officer, he also had a copy of the report of when that gun was stolen, and he just looked at the report and he inadvertently typed the owner's name that was on the report.

Appellant's trial counsel made no objection to that testimony. Nonetheless, the court immediately cautioned the jury:

Ladies and gentlemen, this defendant before you is not charged with stealing this gun in any connection with that at all. He's only charged with the possession of it without license.

■ Appellant now argues that the officer's statement so prejudiced him at trial that his conviction must be reversed. We cannot agree. We have stressed [Hill v. United States, D.C.App., 280 A.2d 925, 926 (1971)]:

The power of this court to notice errors raised for the first time on appeal is discretionary and it has long been held in this jurisdiction that "[a]bsent a clear showing of prejudice, we are not disposed to notice alleged errors which are raised for the first time on appeal." Harris v. United States, 112 U.S.App.D.C. 100, 101, 299 F.2d 931, 932 (1962) . . . .

Although defense counsel made no objection, the court sua sponte cautioned the jurors against speculating about the theft of the gun. We believe that such a response would have been sufficient to protect appellant's rights even if an objection had been made, and clearly the incident did not constitute plain error. (Moreover, had the jury believed the defendant's version of the facts, the officer's comment would have been irrelevant.)

This is not to suggest, however, that we approve either the officer's gratuitous statement that the gun was stolen or the test-fire officer's unwillingness to correct his error.[7] We simply conclude that any potential prejudice was sufficiently diluted by the court's instruction. The evidence of appellant's guilt was compelling, and any possible error was harmless. *See, e. g.,*

---

7. When Officer Comeau pointed out the error at the time it was made, the range officer apparently responded, "That's okay, you can just explain that later on."

Adams v. United States, D.C.App., 302 A. 2d 232, 234–235 (1973); Washington v. United States, 134 U.S.App.D.C. 223, 225–226, 414 F.2d 1119, 1121–1122 (1969); *see also* D.C.Code 1973, § 11–721(e).

Affirmed.