Michael A. **CUNNINGHAM,** Appellant,

v.

**UNITED STATES,** Appellee.

Nos. 12541, 79–347.

District of Columbia Court of Appeals.

Argued Oct. 30, 1979.

Decided Dec. 4, 1979.

Nathan I. Silver, Washington, D. C., appointed by the court, was on the brief, for appellant.

John H. Sturc, Asst. U. S. Atty., Washington, D. C., with whom Carl S. Rauh, U. S. Atty., and John A. Terry and Paul L. Knight, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before GALLAGHER, MACK and PRYOR, Associate Judges.

PRYOR, Associate Judge:

Appellant and his codefendant, Charles Estes, were convicted by a jury of armed robbery, D.C.Code 1973, §§ 22–2901, –3202; subsequently he was sentenced to a term of ten to thirty years imprisonment. On appeal he contends the trial court erred (1) by denying his motion for acquittal on the grounds of insufficient evidence; (2) by failing to give the jury a cautionary instruction that evidence admitted against one defendant is to be considered only against that defendant;[1] (3) by not severing the trial despite defense counsel's failure to make a motion for severance.

Pursuant to D.C.Code 1973, § 23–110, appellant has also made collateral attack upon his conviction on the grounds of ineffective assistance of counsel. In both of these instances, we affirm.

### I.

On an early afternoon in January 1976, Charlene Fogg, the assistant manager of Murry's Steaks, noticed two men walking across the parking lot towards the store. They entered and began to shop for meat. At one point, Donald Hayes, the store clerk,

---

1. The court instructed the jury that it was to give each defendant separate and individual consideration in reaching a verdict. Appellant's argument in this respect is not tenable.

assisted them in pricing some beef. After the other customers had left, the two men placed a box on the counter. The shorter of the two stood behind Mr. Hayes with a revolver and the taller man told Ms. Fogg, "You don't want him to get hurt do you? Just be cool." While the shorter man directed Mr. Hayes to the rear of the store, Ms. Fogg placed the cash drawer on the counter.

A few moments later, Edward Ekers, the manager of the store, entered and noticed "something funny" because the cash drawer, which belonged in the cash register, was on the counter. While he was watching the man at the cash register, the shorter man positioned himself behind Mr. Ekers and, partially exposing the gun, ordered the store manager to move to the rear of the store with Hayes. Ekers suggested that he and Hayes be placed in the large walk-in freezer and the shorter robber agreed. Once inside the freezer, Ekers and Hayes pushed the silent alarm and waited. The robbers took the money out of the cash drawer. After ripping the phone from the wall, they warned Ms. Fogg not to pursue or call for help and fled.

A few days later, Detective Finch went to Murry's Steaks to determine whether any of the employees could identify the robbers from an array of photographs. He arranged nine or ten black and white photographs in two rows on the counter. Shortly after Ms. Fogg began viewing the photographs she identified Mr. Charles Estes, appellant's codefendant, as one of the robbers. Before she had finished viewing the photographs, she was called away to serve some customers in the store. Detective Finch attempted to show the photographs to Donald Hayes. Initially, Hayes flatly refused to cooperate; later he shuffled through the pictures perfunctorily and stated that he did not recognize anyone. Heated words were exchanged between them, but Hayes adamantly refused to examine the pictures carefully. For whatever reason, Finch left the store without showing Ms. Fogg the remainder of the photographs that she did not see in the first instance.

On January 1, 1977, Ms. Fogg attended a lineup in which both the appellant and the codefendant were presented. When asked whether she recognized anyone, she identified Mr. Estes. The officer thanked her and she left the room. Moments later Officer Rose, who was standing in for Detective Finch at the lineup, dashed out of the lineup room into the hall and called out to Ms. Fogg, "Wait a minute." As he approached her, she spontaneously blurted out that she also recognized one of the other men in the lineup as being the short robber. She identified him by his number and position in the lineup. The second individual identified was appellant. At trial, Ms. Fogg explained that she did not identify the appellant in the lineup room because she was under the impression that the lineup officer only wanted her to make one identification.

While they were still standing in the hallway, Officer Rose pulled out an array of pictures, which included a picture of the appellant, and showed them to Ms. Fogg. She identified the appellant again. Later when shown a picture of the lineup, she identified both the appellant and his codefendant. Finally, at trial, she positively identified Estes and the appellant as being the two men who robbed Murry's Steaks on January 10, 1976.

## II.

Appellant contends that there was insufficient evidence to convict him. We can reverse on this ground only if it can be shown that "there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt." *Raymond v. United States,* D.C.App., 396 A.2d 975, 978 (1979); *Crawford v. United States,* 126 U.S.App.D.C. 156, 375 F.2d 332 (1967). To be sure, the main thrust of the government's case, in addition to some other circumstantial evidence, was the identification testimony of Ms. Fogg. She was an eyewitness to the incident and identified appellant as one of the robbers on three occasions: (1) the photographic showing in the hall after the lineup; (2) the showing of the lineup photograph; and (3) the in-court

identification. We are, of course, mindful of the dangers in situations where the prosecution's main evidence is an identification by one witness. *See Smith v. United States,* D.C.App., 343 A.2d 40, 42 (1975). In this instance, unlike those cases, the witness had several opportunities to make an identification. At each opportunity the response was clear and unequivocal. There was a reasonable basis for the jury's acceptance of her testimony. She was present during the entire robbery which lasted approximately twenty minutes. The store was well-lit. Her view was unobstructed and neither man was wearing a mask. In the jury's presence she was thoroughly cross-examined by each of the defense attorneys. The jury made its finding and we conclude that there is no substantial likelihood of irreparable misidentification, and thus will not disturb it.

### III.

■ Appellant contends the trial court committed reversible error by failing, *sua sponte,* to sever the trial of appellant and his codefendant. We do not agree. When two or more defendants are charged with jointly committing a criminal offense, there is a strong presumption that they will be tried together. *Christian v. United States,* D.C.App., 394 A.2d 1, 20 (1978). The trial court has broad discretion to rule upon a motion to sever. *Clark v. United States,* D.C.App., 367 A.2d 158, 160 (1967). In order to reverse the trial court we must find that the trial court clearly abused its discretion. Moreover, the appellant must affirmatively prove that his rights have been prejudiced by the denial of the motion to sever. *Id.* Severance is not required merely because evidence would be admissible against one defendant and not the other or because evidence against one defendant is more damaging than the evidence against the other. *United States v. Leonard,* 161 U.S. App.D.C. 36, 47, 494 F.2d 955, 966 (1974); *United States v. Harris,* 441 F.2d 1333, 1336 (10th Cir. 1971). Severance is required

when a joint trial will result in a manifest prejudice.

> Manifest prejudice occurs only where the evidence of a defendant's complicity in the overall criminal venture is *de minimis* when compared to the evidence against his codefendants. [*Christian, supra,* at 21.]

■ The appellant and his codefendant were charged with armed robbery. The evidence against both defendants is essentially the same. That is, Ms. Fogg, an eyewitness, identified them both as the perpetrators of the robbery of Murry's Steak Store. There was additional evidence against the codefendant, Mr. Estes, that, if believed, would have served to impeach him,[2] but the government's case against both men centered around the testimony of Ms. Fogg. Moreover, both men offered the defense of alibi, and thus their defense strategies did not conflict. On these facts we conclude that the court would not have had to sever the trial even if the defense counsel had requested it, and thus the trial court's failure to sever the trial *sua sponte* did not amount to plain error. If the appellant failed to request an instruction of the court or to make an objection, then we only need determine whether this omission amounted to plain error. *Watts v. United States,* D.C.App., 362 A.2d 706 (1976) (en banc). The case will only be reversed if this absence of trial court action was so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial. *Morgan v. United States,* D.C.App., 402 A.2d 598 (1979). We find no such prejudice.

### IV.

■ Finally, we consider the question of ineffective assistance of counsel. The test, which we have recently and consistently stated, is whether the representation by counsel was so grossly incompetent as to blot out the essence of the defense. *Oesby*

---

**2.** Mr. Estes testified that he was working with Mr. Garlington the night before the robbery took place. However, Mr. Estes' supervisor,

Mr. Brown, brought records indicating that neither Mr. Estes nor Mr. Garlington worked on that night.

**1244**

*v. United States,* D.C.App., 398 A.2d 1 (1977); *Woody v. United States,* D.C.App., 369 A.2d 592 (1977); *Angarano v. United States,* D.C.App., 312 A.2d 395 (1973), *petition for reconsideration denied,* 329 A.2d 453 (1974) (en banc). It follows that decisions by a trial advocate in the area of strategy and tactics, though subject to review, should be given considerable latitude. *Id.*

In this instance, the complaints raised against appellant's trial counsel are a reiteration of arguments already advanced. Namely, it is said that the questions of identification and alibi were not properly prepared and presented. The trial court conducted a hearing on this point and denied relief. After reviewing the entire record on a complaint which evolved subsequent to trial and sentencing, we find it unpersuasive. In addition to what has already been said, it seems clear that the main thrusts of appellant's defense were clearly presented. No substantial defenses were hampered in any way.

We conclude that the trial court did not commit reversible error nor did defense counsel provide ineffective assistance of counsel.

*Affirmed.*