Leonard MORRISON, Appellant,

v.

UNITED STATES, Appellee.

No. 79–117.

District of Columbia Court of Appeals.

Submitted March 25, 1980.

Decided June 16, 1980.

Rehearing En Banc Denied Aug. 1, 1980.

---

Enid Hinkes, Washington, D. C., appointed by the court, was on the brief for appellant.

Carl S. Rauh, U. S. Atty., Washington, D. C., when the brief was filed, John A. Terry, Reggie B. Walton, and Bobara E. Liles, Asst. U. S. Attys., Washington, D. C., were on the brief for appellee.

Before NEWMAN, Chief Judge, HARRIS, Associate Judge, and PAIR, Associate Judge, Retired.

PAIR, Associate Judge, Retired:

A jury convicted appellant of first degree burglary while armed (D.C.Code 1973, § 22–1801); armed robbery (D.C.Code 1973, § 22–2901); and assault with a dangerous weapon (D.C.Code 1973, § 22–502). Because a pistol was employed in the burglary and robbery, appellant was subjected to the enhanced penalty provision of D.C.Code 1973, § 22–3202.[1] Appellant was convicted also of carrying the pistol without a license in violation of D.C.Code 1973, § 22–3204.

Urging reversal of the judgments of conviction, appellant makes two claims: (1) that the trial court erred in denying his motions to suppress photographic and line-up identifications as impermissibly suggestive; and (2) that the government failed to establish as an essential element of its proof that the pistol carried was operable. We find the claims to be without merit and affirm all convictions.

---

1. That section reads in pertinent part:

 (a) Any person who commits a crime of violence in the District of Columbia when armed with . . . any pistol . . .—

 (1) may, if he is convicted for the first time . . . be sentenced, in addition to the penalty provided for such crime, to a period of imprisonment which may be up to life imprisonment. . . .

## I

On January 29, 1978, at approximately 2:00 P.M., Evelyn Lewis was inside her house at 1604 4th Street, N.W. with her children, James and Antoinette Ford, when there was a knock on her door. James Ford responded and three men, each carrying a handgun, rushed into the house. James Ford was forced back into the living room and ordered to lie on his stomach on the floor, and appellant remained in the living room guarding him with a gun while the other two men went into the adjoining bedroom where Mrs. Lewis and her daughter, Antoinette, were seated. The two men searched the bedroom as appellant stood guard in the doorway between the two rooms. During the search of the bedroom, the gun of one of the two men was discharged. The men seized approximately $250.00, and after about ten to fifteen minutes, left the house with appellant.

Shortly after the robbery, the police were given descriptions of the three men. Antoinette and James Ford told the police that they recognized appellant as someone they had known as "Bay Brother." They knew him from association at the Dunbar Recreation Center. James Ford had seen appellant at the Center at least twice a week over a four-year period, and, on occasions, talked and played basketball with him.

Antoinette Ford was taken to police headquarters on the day of the robbery, was shown nine photographs from the "Bay Brother" file kept by the police, and recognized appellant's photograph as the person who stood guard between the two rooms as his companions robbed her and her mother in the bedroom. On February 3, 1978, both James and Antoinete Ford identified appellant from a ten-man lineup as one of the participants in the burglary and robbery. On February 21, Mrs. Lewis was shown a photograph of the lineup in her home, and she also identified appellant as a participant.

Pretrial, appellant moved to suppress the identification evidence. A suppression hearing was held, at which there was testimony by Mrs. Lewis, her children, the uniformed police officers who first investigated the robbery complaint, and the detective who conducted the photographic confrontation for Antoinette Ford. The trial court, unable to find that the confrontations were in any way suggestive, denied appellant's motions to suppress both the photographic and the lineup identifications.

The identification testimony was introduced at trial, together with positive in-court identifications from the three witnesses. The government then established by competent evidence that appellant was not on the day of the robbery possessed of a license to carry a pistol in the District of Columbia. Both at the close of the government's case and at the end of all the evidence, appellant's counsel moved for judgment of acquittal. The motion was denied as to all counts except one count of assault with a dangerous weapon on Antoinette Ford. This appeal followed.

## II

Appellant first contends that the photographic and lineup identifications should have been suppressed as impermissibly suggestive. The test for determining its admissibility is whether the out-of-court identification procedures were "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). *Accord, Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Sheffield v. United States*, D.C.App., 397 A.2d 963, *cert. denied*, 441 U.S. 965, 99 S.Ct. 2414, 60 L.Ed.2d 1071 (1979); *Ellis v. United States*, D.C.App., 395 A.2d 404 (1978). Upon review of the record, we find nothing to support the claim that appellant was denied due process. Antoinette Ford selected appellant's picture from an array of nine photographs shown to her on the same day as the robbery. Furthermore, it was not improper for Detective Webb to begin his investigation with a display of photographs from the "Bay Brother" file, since the witness told police she had recognized one of the robbers as

"Bay Brother." Both Antoinette and James Ford testified that there was no attempt to suggest which man to pick from the lineup arranged by the police five days after the robbery. Mrs. Lewis also had ample opportunity to consider, uninfluenced, the photograph of the lineup, and she again identified appellant. We hold, therefore, that the trial court did not err in concluding that the identification procedures were not impermissibly suggestive.

### III

Appellant's final contention is that his conviction on the weapons charge was erroneous because the government did not establish that the pistol he held during the commission of the crimes was operable. D.C.Code 1973, § 22–3204 provides in pertinent part:

> No person shall within the District of Columbia carry either openly or concealed on or about his person, except in his dwelling house or place of business or on other land possessed by him, a pistol, without a license therefor issued as hereinafter provided . . . . .

The statute does not declare operability to be an element of the offense. However, there are dicta in cases decided by this court which have had the effect of writing into the statute a requirement that the government establish as an essential element of its proof that the pistol carried was operable. *See, e. g., Rouse v. United States*, D.C.App., 402 A.2d 1218, 1221 (1979); *Jackson v. United States*, D.C.App., 395 A.2d 99, 103 n.3 (1978); *Anderson v. United States*, D.C.App., 326 A.2d 807, 811 (1974), *cert. denied*, 420 U.S. 978, 95 S.Ct. 1405, 43 L.Ed.2d 659 (1975).[2] In addition to this, the trial court instructed the jury in the language of Criminal Jury Instructions for the District of Columbia, No. 4.81 (3d

ed. 1978) that the government must establish as an essential element of its proof that the gun was operable. The crucial question, therefore, is whether there was evidence from which the jury could have found, as instructed by the trial court, that the pistol involved in the armed burglary, robbery and assaults was in fact operable.

 Given the elements of the offense as stated, we now consider whether appellant's motion for judgment of acquittal on the weapons count should have been granted by the trial court. On a motion for judgment of acquittal, the trial court and this court must view the evidence in the light most favorable to the government's position. *Stewart v. United States*, D.C. App., 383 A.2d 330, 331 (1978); *Calhoun v. United States*, D.C.App., 369 A.2d 605, 607 (1977); *Crawford v. United States*, 126 U.S. App.D.C. 156, 158, 375 F.2d 332, 334 (1967). The trial court's decision to deny such a motion is reversible only if it can be shown that "there is no evidence upon which a reasonable person might fairly conclude guilt beyond a reasonable doubt." *Cunningham v. United States*, D.C.App., 408 A.2d 1240, 1242 (1979); *see Crawford, supra*. Here, there was, in our view, ample evidence to prove the elements of the substantive offense. The government established through eyewitness testimony that appellant was armed with a pistol during the robbery. While the pistol was not introduced into evidence at trial because the weapon was never recovered, this fact does not preclude establishment of appellant's possession of the pistol by independent means. *Lee v. United States*, D.C.App., 242 A.2d 212, 214 (1968); *Coleman v. United States*, D.C.App., 219 A.2d 496, 498, *rev'd on other grounds*, 130 U.S.App.D.C. 60, 397 F.2d 621 (1966). Thus, we find that the

---

**2.** *But see also* in this connection, *Brown v. United States*, D.C.Mun.App., 66 A.2d 491 (1949), wherein the late Chief Judge Cayton reviewed the legislative history of § 22–3204. and concluded that the essential elements of the offense are (1) the carrying of a pistol and (2) without a license to do so. *See also Bussie v. United States*, D.C.Mun.App., 81 A.2d 247 (1951); *compare Brown v. United States*, D.C.

App., 379 A.2d 708, 710 n.3 (1977). While cases after the 1949 *Brown* case, *supra*, have spoken of the requirement of operability, there is no necessity for a pistol to be loaded for it to fall within the proscription of § 22–3204. Hence, it is somewhat anomalous for the court to have translated the government's custom of proving operability into an element of the offense.

testimony of the robbery victims was sufficient proof that appellant carried a pistol as charged, thereby establishing this element of the offense.

■ It is a first principle that the jury, as finder of fact, has the function of determining the credibility of witnesses, the weighing of the evidence, and the drawing of justifiable inferences from proven facts. *Kenhan v. United States*, D.C.App., 263 A.2d 253, 254 (1970). On the facts presented in the case at bar, it was reasonable to infer that the pistol held by appellant during the robbery was operable. When the three robbers burst into the private residence of Evelyn Lewis, each displaying a gun to back up his demands, the assailants must have intended that their victims believe the weapons were capable of being discharged; in fact, the gun carried by one of appellant's companions was discharged. Consequently, it is our opinion that the factfinder could fairly infer that the guns were both loaded and operable. *United States v. Prater*, 149 U.S.App.D.C. 188, 191, 462 F.2d 292, 295 (1972). Viewing the evidence as we must in the light most favorable to the government, *Calhoun, supra*, we note that James Ford was forced to lie on his stomach on the floor of the living room and was guarded by appellant standing above him with a gun aimed at his body while appellant's confederates searched the bedroom for valuables. Both Antoinette Ford and Mrs. Lewis testified that they saw appellant holding a gun pointed at James Ford. Just as it would be reasonable for a robbery victim to assume that a pistol directed at him in a menacing manner is loaded and operable, so too would it be reasonable for the jury to infer from such facts that the gun was operable. Since appellant was convicted of the offense based upon evidence both direct and circumstantial, the jury must have drawn this reasonable inference.[3] We affirm all convictions.

*Affirmed.*

NEWMAN, Chief Judge, dissenting:

I decline to join the majority's unprincipled holding that because an object looked like a pistol and was described by the victim of an armed robbery as being one, a jury could conclude beyond a reasonable doubt that it was a pistol in *operable* condition. To affirm a conviction of carrying a pistol without a license on such lack of proof of operability raises issues of constitutional dimension. *See Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) (prosecution must establish each element of an offense beyond a reasonable doubt); *Thompson v. City of Louisville*, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960) (conviction devoid of evidentiary support violates the Due Process Clause).

3. It would have been contrary to reason, in our opinion, to conclude, as we were urged to do, that appellant, convicted of burglary, robbery, and assault while armed with a pistol, should nevertheless have been acquitted of carrying the very same pistol without a license simply because the government was unable to prove by direct evidence that the pistol was operable.