Harry Lee STRONG, Appellant,

v.

UNITED STATES, Appellee.

No. 89–503.

District of Columbia Court of Appeals.

Submitted June 28, 1990.
Decided Oct. 18, 1990.

Joseph J. Gigliotti, Washington, D.C., appointed by this court, was on the brief for appellant.

Jay B. Stephens, U.S. Atty., John R. Fisher, Thomas J. Tourish, Jr., Barbara Anne Grewe, Washington, D.C., and Eric M. Acker, Asst. U.S. Attys., San Francisco, Cal., were on the brief for appellee.

Before BELSON and TERRY, Associate Judges, and MACK, Senior Judge.

MACK, Senior Judge:

After a jury trial, appellant was acquitted of assault (D.C.Code § 22–504 (1989 Repl.)), and convicted of carrying a dangerous weapon (D.C.Code § 22–3204 (1989 Repl.)). He challenges his conviction, noting that it was based upon his possession of an inoperable air pistol which resembled a .357 magnum handgun. He contends that the trial court's denial of his motion for judgment of acquittal was improper because there was insufficient evidence that the air pistol was a "dangerous weap-

on" for purposes of § 22–3204. We agree with appellant and reverse.

I.

On the afternoon of October 13, 1988, appellant was conversing with friends at a local pizza shop. Three high school girls arrived at the shop, and as they entered they heard appellant making raucous comments about the appearance of a female customer. They also noticed that what appeared to be the handle of a gun was protruding from the front right pocket of appellant's pants. One of the girls testified at trial that she was frightened by this sight because she knew that appellant often spoke in a threatening manner. Soon thereafter, appellant turned his attention to the girls, making unflattering comments, and obstructing the passage of one who was returning to her seat from the food counter. As this girl was leaving the store, appellant reached out his hand and struck her on the backside. The girl struck back, and an exchange of blows followed.

After the altercation appellant left the pizza shop and walked to a nearby establishment where he began playing video games. He was approached by a police officer who had received a "lookout" reporting that appellant had just assaulted a student. The officer instructed appellant to place his hands on a nearby window. As appellant complied with the request, an inoperable air pistol fell out of his pocket,[1] whereupon the officer drew his service weapon. Appellant was placed under arrest and charged with assault and carrying a dangerous weapon. D.C.Code §§ 22–504, –3204 (1989 Repl.).

At trial appellant testified in his own defense. He testified that in the pizza shop, he and others were laughing and joking about the appearance of the female customer. His testimony regarding his reasons for carrying the air pistol was as follows:

Q. (defense counsel): Why were you carrying it [the air pistol]?

---

1. At trial, defense counsel entered into evidence a Metropolitan Police Department certificate in-
dicating that the air pistol was inoperable.

A. (appellant): Well, it wasn't intended to hurt the girls.... It was intended—two hustlers jumped me one night ... and I intended to keep [it] in my pocket, just in case they do come up, they pull a baseball bat and hit me again in my legs and—

MR. PROZAN (prosecutor): I would like to object, Your Honor.

A. (appellant):—show them that—

THE COURT: Excuse me. What's the basis for the objection?

MR. PROZAN: Relevancy issue, Your Honor.

THE COURT: Overruled, Mr. Prozan.

MR. PROZAN: Thank you.

A. (appellant): That's the reason I brung the gun. It wasn't a real gun, it's imitation, to stop people from hitting me with poles and baseball bats.

After extended argument on the issue of whether the air pistol was a dangerous weapon within the meaning of § 22–3204, the trial court denied appellant's motion for judgment of acquittal. The court noted that the evidence would support the conclusion that appellant was carrying the air pistol to intimidate because it looked "just like a real firearm," but added that the issue was a close one, meriting guidance by this court.[2] The jury found appellant not guilty of assault but guilty of carrying a dangerous weapon. This appeal followed.

## II.

As in all appeals contending that there was insufficient evidence to support a criminal conviction, we must consider the evidence in the light most favorable to the government, and we may reverse only when the government has produced no evidence from which a reasonable mind might fairly infer guilt beyond a reasonable doubt or for an error of law. D.C.Code § 17–305 (1989 Repl.); *Langley v. United States*, 515 A.2d 729, 731 (D.C.1986). Our reversal of appellant's conviction is based upon the conclusion that, as a matter of law, appellant's inoperable weapon was not a "dangerous weapon" for purposes of D.C.Code § 22–3204 (1989 Repl.).

D.C.Code § 22–3204 prohibits any individual from carrying "either openly or concealed on or about his person ... a pistol, without a license therefor ... or any deadly or dangerous weapon capable of being so concealed." D.C.Code § 22–3204 (1989 Repl.).[3] An air pistol, even if operable, does not constitute a "pistol" for purposes of § 22–3204, *see* D.C.Code § 22–3201(a) (1989 Repl.),[4] so appellant's conviction was necessarily focused upon the theory that the air pistol was a "dangerous weapon." In order to support a conviction for carrying a dangerous weapon under § 22–3204, the government must show that the defendant (1) carried in an

---

**2.** In its instructions to the jury, the court noted, *inter alia,* "In this connection, however, you are instructed that the Government is not required to prove that the defendant had a specific intent to use the instrument unlawfully."

**3.** At the time of appellant's conviction, the full text of D.C.Code § 22–3204 was as follows:

No person shall within the District of Columbia carry either openly or concealed on or about his person, except in his dwelling house or place of business or on other land possessed by him, a pistol, without a license therefor issued as hereinafter provided, or any deadly or dangerous weapon capable of being so concealed. Whoever violates this section shall be punished as provided in § 22–3215, unless the violation occurs after he has been convicted in the District of Columbia of a violation of this section or of a felony, either in the District of Columbia or in another jurisdiction, in which case he shall be sen-

tenced to imprisonment for not more than 10 years.

After appellant's conviction the Council of the District of Columbia added a new subsection to the statute. Law Enforcement Amendment Act of 1989, D.C. Law 8–120, § 3(c), 37 D.C.Reg. 24 (May 8, 1990). In the absence of any specific legislative intent to the contrary, we will apply the law as it existed at the time of his conviction. *See International Brotherhood of Boilermakers v. NLRB,* 114 U.S.App.D.C. 372, 374, 316 F.2d 373, 375 (1963).

**4.** Section 22–3201(a) provides that, as it is used in § 22–3204, the term "pistol" includes "any firearm with a barrel less than 12 inches in length." D.C.Code § 22–3201(a) (1989 Repl.). A "firearm" is defined as a "weapon from which a shot is discharged by gunpowder." *Webster's Third New International Dictionary* 854 (1969). An air pistol is not a firearm because it is discharged by the use of compressed air.

open or concealed manner a dangerous weapon, (2) intended to do the acts constituting carrying the weapon, and (3) intended to use the object as a dangerous weapon. *In re S.P.*, 465 A.2d 823, 826 (D.C. 1983).

■ We have defined a "dangerous weapon" as "one which is *likely* to produce death or great bodily injury by the use made of it." *Scott v. United States*, 243 A.2d 54, 56 (D.C.1968) (emphasis in original). Some items, such as particularly menacing knives, have been held to be inherently dangerous. *Id.* An object which is not inherently dangerous can become dangerous by its use as a weapon. *Clarke v. United States*, 256 A.2d 782, 786 (D.C. 1969). Some factors to consider when determining whether an individual intends to use an object as a dangerous weapon are (1) the design of the instrument, (2) the conduct of the defendant prior to his arrest, (3) any physical alteration of the object, and (4) the time and place of its possession. *In re S.P., supra,* 465 A.2d at 826.

### III.

■ Appellant's inoperable air pistol did not constitute a "dangerous weapon" for purposes of § 22–3204. The pistol was not inherently dangerous, and appellant did not use it in a manner which rendered it so.

He at no time brandished the pistol. Although he testified that he carried the pistol in order to frighten potential attackers, he could not cause "death or great bodily injury" by firing it at anyone, as it was inoperable.[5]

The government argues that although the air pistol was not inherently dangerous, appellant rendered it dangerous for purposes of § 22–3204. Its theory is not based on the fact that the object in question was an air pistol, but on the evidence that it looked like a .357 magnum handgun.[6] According to this theory, the pistol became "dangerous" when appellant carried it in a manner intended to frighten others.[7] The government notes that an imitation firearm is considered a "dangerous weapon" in other contexts where it is used to instill fear in others, so it should be considered a "dangerous weapon" for purposes of § 22–3204. In particular the government cites D.C. Code § 22–3202 (1989 Repl.) (" 'while armed' statute"), which provides for enhanced punishment of those who commit crimes while armed. As it appeared at the time of appellant's conviction, the "while armed" statute applied to "[a]ny person who commits a crime of violence in the District of Columbia when armed with or having readily available any pistol or other firearm (or imitation thereof) or other dangerous or deadly weapon." D.C.Code § 22–3202 (1989 Repl.).[8] The government also cites

---

**5.** In opposition to a defense motion for judgment of acquittal, the government argued that the evidence could support a finding that appellant's testimony about the "hustlers" who he feared would attack him could support a finding that he planned to use the pistol as a "bludgeon." The government has not made this argument on appeal. In any case, appellant never testified that he would use the pistol to hit his attackers, so the "bludgeon" theory is speculative. Furthermore, we could not affirm a § 22–3204 conviction based on the speculation that, if attacked, appellant might use his pistol to strike someone in self-defense. The use of an otherwise harmless object in self-defense does not constitute a violation of any D.C.Code weapons provisions, *see generally Norfleet v. Rosen,* 539 A.2d 1089 (D.C.1988), and we cannot convict an individual for saying that he might defend himself in that way.

**6.** At trial appellant testified that the pistol was a ".357 imitation."

**7.** The government relies on four pieces of evidence to support a finding that appellant intended to frighten others with the pistol: (1) evidence that appellant was carrying the pistol in his front right pocket; (2) the testimony of the girl who claimed to have seen appellant's pistol and had been frightened as a result; (3) appellant's testimony stating that the arresting officer did not immediately draw his service revolver, but did so when the air pistol dropped out of appellant's pocket; (4) appellant's testimony explaining that he carried the gun to scare potential attackers.

**8.** The Council of the District of Columbia has since amended § 22–3202 to include "[a]ny person who commits ... a dangerous crime in the District of Columbia." Law Enforcement Amendment Act of 1989, D.C. Law 8–120, § 3(c), 37 D.C.Reg. 24 (May 8, 1990); D.C.Code § 22–3202(a) (1990 Supp.).

cases in other jurisdictions where statutory armed enhancement provisions do not specifically include imitation firearms, but where the courts have upheld convictions of those who used imitation guns to facilitate the commission of a crime. *See, e.g., McLaughlin v. United States*, 476 U.S. 16, 106 S.Ct. 1677, 90 L.Ed.2d 15 (1986). Under the government's theory, a person who uses an imitation firearm to frighten others would be subject to prosecution, even if that person did not attempt to coerce those people to cooperate in some other criminal act. We cannot accept the government's analysis.

## IV.

■ The prevention of coercion is at the heart of enhancement provisions which include imitation weapons within their scope. *See Paris v. United States*, 515 A.2d 199 (D.C.1986). Convictions under the "while armed" statute will stand only if a defendant (1) has committed some violent crime, and (2) has used the threat of injury by a dangerous weapon to force his victims to comply with his illegal requests. *See id.* at 204. As noted in a House Report accompanying the 1970 amendment to the "while armed" statute, which added imitation weapons to the list of prohibited items:

> To the unknowing victim of rape or robbery, it is of little or no consequence that subsequent to the crime it is determined that the weapon used was an antique firearm, blank pistol, or toy rifle, or other imitation. At the time of the rape or robbery, the victim is justifiably put in fear of being shot or beaten with whatever weapon or imitation thereof is employed by his assailant.

H.R.Rep. No. 91–907, 91st Cong., 2nd Sess. § 205 (1970), *reprinted in* 1 *Legislative History of the District of Columbia Court Reform and Criminal Procedure Act of 1970*, at 67–68 (1970). Pursuant to the "while armed" provision, an otherwise non-threatening object is not a "dangerous weapon" unless it is used to further some illegal purpose.

■ By contrast, the purpose of § 22–3204 is to protect citizens from actual injury which may be caused by the use of a dangerous weapon. *Roper v. United States*, 564 A.2d 726, 730 (D.C.1989). As we explained in *Roper*, the offense of carrying a dangerous weapon "is essentially a crime of possession, designed to keep such dangerous items off the street." *Id.* It is indicative of this purpose that in order to support a conviction under § 22–3204 for carrying a pistol without a license, the pistol must be operable. *See, e.g., Townsend v. United States*, 559 A.2d 1319, 1320 (D.C. 1989); *Anderson v. United States*, 326 A.2d 807, 811 (D.C.1974), *cert. denied*, 420 U.S. 978, 95 S.Ct. 1405, 43 L.Ed.2d 659 (1975). The requirement that the weapon actually be likely to injure someone is also illustrated by *Rouse v. United States*, 391 A.2d 790 (D.C.1978), where we upheld the conviction under § 22–3204 of a man who was carrying a disassembled pistol. We based our affirmance on the conclusion that the defendant could have assembled the gun quickly and thereby harmed someone. *Id.* at 791. Given § 22–3204's purpose of protecting the safety of the public, we cannot affirm a § 22–3204 conviction in cases such as this where there is no evidence that the defendant planned to harm anyone.

## V.

■ An examination of the statutory scheme governing the use of weapons in the District of Columbia supports our exclusion of imitation firearms from the reach of § 22–3204. The most obvious indication that § 22–3204 should not apply to imitation firearms is that, unlike other D.C. weapons statutes, § 22–3204 does not specifically include them within its scope. Specific reference to imitation firearms is found not only in the "while armed" statute, but also in § 22–3214, which provides, in pertinent part, that "[n]o person shall within the District of Columbia possess, with intent to use unlawfully against another, an imitation pistol...." D.C.Code § 22–3214(b) (1989 Repl.). Like the "while armed" statute, § 22–3214 on its face indicates that the legislature did not intend the possession of imitation firearms to be pro-

hibited unless they are used for some illegal purpose. This court has noted "the statute [§ 22–3214(b)] clearly does not forbid the mere possession of an imitation pistol, but it is equally apparent that the provision does forbid the possession of such an imitation pistol with intent to use it in an assaultive or otherwise unlawful manner." *United States v. Brooks*, 330 A.2d 245, 246–47 (D.C.1974), cited in *Reid v. United States*, 581 A.2d 359, 362 (D.C. 1990).[9]

Furthermore, some other items which merely look like operable firearms are specifically excluded from the reach of certain D.C.Code weapons provisions. D.C.Code § 22–3213 (1989 Repl.). Section 22–3213 provides that "[e]xcept as provided in § 22–3202 and § 22–3214(b), this chapter[10] shall not apply to toy or antique pistols unsuitable for use as firearms." D.C.Code § 22–3213 (1989 Repl.). Although the air pistol which appellant carried is technically not a toy or an antique, the aim of § 22–3213 is to exempt from prosecution those who, like appellant, are merely carrying something that looks like a gun without any intention of using it to commit a crime. Furthermore, by specifically mentioning § 22–3214 and § 22–3202 (the "while armed" statute), § 22–3213 also suggests that they are the only two statutes under which an individual can be convicted for use of a toy or antique pistol. If we included imitation pistols within the reach of § 22–3204, then as a practical matter antique or toy pistols would also fall within its scope. Such a holding, therefore, would conflict with the exception carved out by § 22–3213.

Recent amendments to § 22–3204 provide further support for the proposition that imitation firearms should not be included within the scope of the statute. In 1990, the District of Columbia Council add-

ed a new subsection to § 22–3204 which prohibits the possession of a dangerous weapon during the commission of a crime of violence. Law Enforcement Amendment Act of 1989, D.C. Law 8–120, § 3(c), 37 D.C.Reg. 24 (May 8, 1990) ("Law Enforcement Act").[11] The added provision, designated § 22–3204(b), provides in pertinent part:

> No person shall within the District of Columbia possess a pistol, machine gun, shotgun, rifle, or any other firearm or imitation firearm while committing a crime of violence or dangerous crime as defined in § 22–3201.

D.C.Code § 22–3204(b) (1990 Supp.). This amendment allows for the prosecution of individuals who commit violent or dangerous crimes with dangerous weapons in their possession, but who are not subject to prosecution under the "while armed" statute because they did not commit the crime while "armed with or having readily available" the weapon.

The addition of subsection (b) to § 22–3204 is instructive in two respects. First, it highlights the difference between merely possessing a firearm for purposes of § 22–3204, and being "armed with" a weapon for purposes of the "while armed" statute. More importantly, while the Council wished to add imitation firearms to its list of prohibited items for purposes of § 22–3204(b), it did not change the language of the original provision, now designated subsection (a). The amendment illustrates a legislative intent to vary the definition of "dangerous weapon" according to the circumstances of its use. When an object is used to coerce others into submitting to illegal requests, what is significant is whether the victims believe the item is a weapon. When, however, the item is merely being carried, the question is whether it may actually be used to harm someone.

---

**9.** In *Reid, supra*, we reversed a conviction pursuant to § 22–3214, because the jury was not given instructions sufficient to enable it to know what was an unlawful use in the context of that case.

**10.** Chapter 32, entitled "Weapons," which includes D.C.Code §§ 22–3201 through 3217.

**11.** This provision was first added to the statute by the Law Enforcement Temporary Amendment Act of 1989. D.C. Law 8–19, § 3(c), 36 D.C.Reg. 2844 (July 28, 1989) ("Temporary Act"). Both the Temporary Act and the Law Enforcement Act were passed after appellant's conviction.

Given the statutory scheme which governs the use of weapons in the District of Columbia, as well as the purpose of § 22–3204 as set forth in our prior decisions, we decline to expand the scope of § 22–3204 to include imitation firearms.

The conviction is

*Reversed.*