**Michael MYERS, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 10–CF–764.

District of Columbia Court of Appeals.

Argued April 24, 2012.
Decided Sept. 6, 2012.*

Fleming Terrell, Public Defender Service, with whom James Klein and Alice Wang, Public Defender Service, were on the brief, for appellant.

John P. Gidez, Assistant United States Attorney, with whom Ronald C. Machen Jr., United States Attorney, Roy W. McLeese III, Assistant United States Attorney, at the time the brief was filed, and Mary B. McCord and Amy C. Jaquette, Assistant United States Attorneys, were on the brief, for appellee.

Before GLICKMAN and OBERLY, Associate Judges, and BELSON, Senior Judge.

GLICKMAN, Associate Judge:

Michael Myers appeals his conviction for unlawful possession of a firearm by a convicted felon ("FIP"), in violation of D.C.Code § 22–4503(a)(2) (2009). He contends, and the government concedes, that the trial judge erred in responding to the jury's request for clarification of the *mens rea* element of the offense. We conclude that the error was preserved and not harmless, and that appellant therefore is

---

* The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment. It is now being published upon the court's grant of appellant's motion to publish.

entitled to relief. We vacate his conviction and remand the case for a new trial.

## I.

Appellant was arrested in 2009 at a bus stop in Northeast Washington, D.C., when police found him carrying a garbage bag containing a shotgun that had been disassembled into three parts: a stock and receiver, a barrel, and a barrel nut. He was charged with FIP, which prohibits the knowing possession of a firearm by a felon. Appellant was convicted of a felony in 1993.

At trial, appellant's defense was that he did not knowingly possess a "firearm" within the meaning of the FIP statute. For purposes of that statute, the term "firearm" is defined to mean "any weapon, regardless of operability, which will, or is designed or redesigned, made or remade, readily converted, restored, or repaired, or is intended to, expel a projectile or projectiles by the action of an explosive." [1] This definition encompasses a disassembled firearm, provided that it can be reassembled, but not the component parts considered separately. Appellant testified that he had retrieved the bag from the trash at a construction site, and while he knew it contained gun parts of some kind (which he had hoped to pawn), he did not know those parts could be put together to make a "complete" firearm. [2]

Acknowledging the conceptual validity of appellant's denial of knowledge as a defense, the judge instructed the jury in pertinent part that

The essential elements of this offense [FIP], each of which the Government must prove beyond a reasonable doubt, are: One, that the Defendant possessed a firearm; two, that he did so knowingly

and intentionally, this means consciously, voluntarily, and on purpose, not mistakenly, accidentally or inadvertently. And three, that, at the time the Defendant possessed the firearm, the Defendant had been convicted of a felony. The term "firearm" means a weapon, regardless of operability, which will or is designed or is intended, if assembled, to expel a bullet or other projectile by the action of an explosive.... The Defendant maintains that he did not know that the parts in the bag could be assembled or could form a complete firearm.

After deliberating for about an hour, the jury sent a note seeking clarification of the *mens rea* requirement. The note read:

We would like further explanation on elements 1 + 2 of Count 1 [FIP]. If the defendant was not aware at the time of arrest that the components he was carrying *could* be assembled to form a complete firearm,* then are the elements 1 *and* 2 satisfied?

* we are assuming that he *did* know that he had ·*some* firearm components

In the ensuing discussion with the judge, the prosecutor agreed with appellant that he would not be guilty if he was "unaware that the parts in the bag could make a firearm." Appellant suggested that the judge respond to the note by telling the jury "that, if you do not believe that the Government has proved beyond a reasonable doubt that [appellant] knew the parts he had could form a complete firearm, then element number two is not satisfied." The prosecutor agreed that this instruction would be "appropriate" and proposed that the judge "use the word firearm" with the definition the judge previously had given

---

1. D.C.Code § 22–4501(2A) (2009).

2. ˙The police were able, in fact, to reassemble a shotgun from the three component parts in

appellant's bag, and they successfully test-fired the repaired weapon.

the jury (which was a simplification and clarification of the full statutory definition).

At this point, the judge expressed misgivings about using the imprecise word "complete" to modify the word "firearm." Although the judge had used the term "complete firearm" in her initial instructions as a shorthand synonym for the definition of "firearm," she was concerned that the word "complete" could be misleading, as it might suggest the weapon had to be operable. Noting that this was no problem because operability was not in issue in this case, appellant rejoined that, "It does have to be a complete firearm. Otherwise, we're talking about ... suggesting to the jury that it's a strict liability offense to possess ... component parts of a firearm.... [I]t can be something that is made or remade, designed, or redesigned into a complete firearm but it still has to be a complete firearm."

The judge disagreed. Up until this point, it appears the disagreement was merely semantic, but then the judge cited this court's decision in *Rouse v. United States*[3] as authority for the proposition that "far fewer pieces of a gun were enough to be a gun." The police found the defendant in *Rouse* holding the frame of a .32 caliber revolver, and they located the firing pin and the cylinder on the ground near him. He was charged with carrying a pistol without a license ("CPWL") and convicted of that offense. Concluding that a "disassembled gun" is within the "proscription" of the CPWL statute,[4] we held that "a conviction for carrying a pistol without a license can be sustained when all of the parts of a disassembled pistol are shown to have been conveniently accessible to the defendant, those parts can be quickly and easily reassembled into an operable

gun, and the defendant was observed to be holding an object that reasonably appeared to be related to the gun."[5]

Appellant argued that *Rouse* did not mean a defendant could be convicted of CPWL (or other firearms offenses, including FIP) based on his knowing possession of a part of the weapon such as the frame if he did not know that "all the components are there, that can actually form a complete firearm." Unpersuaded, the judge stated that she would not use the word "complete" to modify "firearm" in re-instructing the jury. Instead, the judge said, she would define "firearm" for the jury "according to the language in our Red Book instructions defining a firearm and say to them that, if they do not find beyond a reasonable doubt that the Defendant knew that the components he was carrying could be assembled to form a firearm ... and then I will define it, then you must find the Defendant not guilty...."

The judge proceeded to re-instruct the jury as follows:

If you do not find beyond a reasonable doubt that the Defendant knew that the components he was carrying could be assembled to form a firearm, then the Government has not satisfied its burden as to elements one and two of count one [FIP]. The term firearm means any weapon regardless of operability which will or is designed or redesigned, made or remade, readily converted, restored or repaired or is intended to expel a projectile or projectiles by the action of an explosive, *the frame or receiver of any such device, or any firearm muffler or silencer.* Antique firearms, destructive devices, signaling devices, and ...

3. 391 A.2d 790 (D.C.1978).

4. *Id.* at 792.

5. *Id.* at 791. It should be noted that *Rouse* did not involve any question as to the definition of a "firearm."

equipment that fire exploding rivets, studs and the like, are not firearms for purposes of District of Columbia law. (Emphasis added.)

The definition of "firearm" in this supplementary instruction (which deviated from the definition in the original instruction) is given in the comment to the Red Book instruction on FIP as "the complete definition of firearm."[6] It appears to support the judge's interpretation of *Rouse*, but actually there has been a mistake; the comment quotes the definition of "firearm" that appears in the District of Columbia's gun registration statute, D.C.Code § 7–2501.01(9) (2008 & 2012 Supp.), which differs from the definition applicable to FIP and other firearms offenses in chapter 45 of Title 22 of the D.C.Code.[7] The italicized portion of the Red Book definition that the judge quoted does not appear in the applicable definition set forth in D.C.Code § 22–4501(2A). This discrepancy was not caught at trial, however.

Approximately two hours after being reinstructed, the jury returned a verdict, finding appellant guilty of FIP.

## II.

It is undisputed that the trial judge's response to the jury note was erroneous. In essence, the jury asked what appellant had to know to be guilty of FIP: Was it enough that he knowingly possessed certain firearm parts, or did he have to know that the parts in his possession could be assembled to make what the judge had defined as a firearm (what the judge initially had referred to as a "complete" firearm as opposed to a mere component)? In order to fulfill its obligation to clear up the jury's confusion with "concrete accuracy,"[8]

the judge needed to clarify that appellant had to know the parts he possessed could be assembled to make a (properly defined) firearm in order to be found guilty—because a "firearm" for purposes of the FIP statute encompasses a dissembled firearm but not its component parts considered separately. By incorporating an inapplicable, overbroad definition of "firearm," the re-instruction did the opposite, erroneously telling the jury it could find appellant guilty as long as he knowingly possessed the frame or receiver of a firearm, even if he knew nothing else.

■ The government argues that appellant failed to preserve his objection to this re-instruction, even though he objected to the judge's decision not to include the word "complete" to modify "firearm," because he failed to object specifically to the judge's use of the inapplicable definition of what constitutes a "firearm." We disagree. Appellant specifically asked the judge to instruct the jury that, in order to find him guilty, it would have to find that he knew the parts in his possession could be assembled to form a "complete" firearm—meaning, he explained, a firearm as the judge initially (and correctly) had defined it for the jury. Plus appellant specifically objected when the judge relied on *Rouse* for the proposition that his knowing possession of the frame or other component parts of a firearm would suffice to convict him without more. Appellant clearly objected to any instruction that equated knowing possession of a frame or receiver (or other part) with knowing possession of a firearm. While appellant did not make every argument he could have made—he evidently was unaware of the error in the Red Book—he "fairly ap-

---

**6.** CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA § 6.511 (5th ed.2009).

**7.** The Red Book does not cite the Code section where the definition is found.

**8.** *Preacher v. United States*, 934 A.2d 363, 368 (D.C.2007) (quoting *Alcindore v. United States*, 818 A.2d 152, 155 (D.C.2003)).

prised" the trial judge of his position as to "the question on which she was being asked to rule."[9]

■ We cannot find the error to have been harmless, even under the less stringent test applicable to non-constitutional error.[10] The evidence of appellant's guilt was not overwhelming, and it permitted the jury to find that appellant knew he possessed the frame or receiver of a firearm but did not know that the component parts he possessed could be pieced together to make a firearm (as properly defined). In its note to the judge, the jury asked if it could return a verdict of guilty based on such a limited finding, implying the jury was thinking of doing exactly that. The re-instruction erroneously gave the jury the go-ahead to do so, making it unnecessary for the jury to grapple with appellant's sole defense and determine whether he possessed the *mens rea* actually required to be guilty of FIP.

For the foregoing reasons, we hereby vacate appellant's conviction and remand his case for a new trial.

**9.** *In re M.C.*, 8 A.3d 1215, 1223 (D.C.2010) (quoting *Hunter v. United States*, 606 A.2d 139, 144 (D.C.1992) (internal brackets omitted)).

**10.** *See Kotteakos v. United States*, 328 U.S. 750, 765, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946) (holding that non-constitutional error requires reversal unless appellate court can conclude, with "fair assurance," that the error did not have "a substantial and injurious effect or influence on the jury's verdict"). If the error was constitutional, because the re-instruction misdescribed the *mens rea* element of the offense and thereby permitted the jury to find appellant guilty without proof of each element beyond a reasonable doubt, reversal is required unless the error was harmless beyond a reasonable doubt. *See Tyree v. United States*, 942 A.2d 629, 638–39 (D.C. 2008).