Douglas NELSON, Appellant,

v.

UNITED STATES, Appellee.

Nos. 10–CF–1227, 10–CF–1228.

District of Columbia Court of Appeals.

Submitted Sept. 27, 2012.

Decided Nov. 1, 2012.

Matthew C. Leefer, Boonsboro, for appellant.

Ronald C. Machen Jr., United States Attorney, Roy W. McLeese III, Assistant United States Attorney at the time the case was submitted, and Elizabeth Trosman, Lara W. Worm, Kenya K. Davis, and Sharon A. Sprague, Assistant United States Attorneys, were on the brief, for appellee.

Before WASHINGTON, Chief Judge, GLICKMAN, Associate Judge, and PRYOR, Senior Judge.

PER CURIAM:

In this consolidated appeal, appellant Douglas Nelson appeals his convictions stemming from two separate trials. In the first trial, appellant was convicted of unlawful distribution of cocaine, in violation of D.C.Code § 48–904.01(a)(1) (2001); and possession of drug paraphernalia ("PDP"), in violation of D.C.Code § 48–1103(a) (2007). On appeal, appellant argues that he was prejudiced by the trial court's admission of "effectively expert testimony" from an arresting officer, who was called as a lay witness, regarding the use of scales for weighing narcotics. Appellant also claims that his counsel was unduly restricted from examining another arresting officer as to his possible bias. In the second trial, appellant was convicted of possession of marijuana, in violation of D.C.Code § 48–904.01(d)(1) (2001); carrying a pistol without a license ("CPWL"), in violation of D.C.Code § 22–4504(a) (2001); possession of an unregistered firearm, in violation of D.C.Code § 7–2502.01 (2001); possession of unregistered ammunition, in violation of D.C.Code § 7–2506.01(3) (2001); and commission of offenses during release, in violation of D.C.Code § 23–1328(a)(1) (2001). On appeal, appellant argues that his CPWL conviction should be reversed because there was insufficient evidence to show that the pistol was operable, and even if the evidence was sufficient, the trial judge committed plain error by failing to instruct the jury that operability was an essential element of that offense. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I.

### A.

An undercover Metropolitan Police Department ("MPD") officer purchased crack cocaine from appellant, who was subsequently arrested and positively identified by undercover officers. At trial, Officer James Craig, one of the arresting officers, testified that a small scale was seized from appellant. The record also reflects that Officer Craig's experience as a police officer includes over twelve years of service in the MPD. During that time, he completed approximately sixteen week-long training courses in narcotics, and took part in "several thousand" narcotics-related arrests. Over appellant's objections, Officer Craig was allowed to testify that, in his experience, scales like the one seized from appellant are often used for "weighing narcotics." Given his experience, the trial judge permitted this testimony on the basis that "it naturally fits in with why [the scale] was ... seized."

During cross-examination of Officer David Smith, another arresting officer, appellant's counsel attempted to elicit testimony showing potential bias; appellant's theory was that Officer Smith's desire for a transfer or promotion motivated his deci-

sion to make this arrest. However, Officer Smith testified that he did not rely on this arrest in his application for a transfer. After further questioning in this regard, the trial judge precluded further questions on the subject. However, other cross examination was permitted.

### B.

Prior to appellant's second trial, officers observed appellant driving a Buick sedan with Maryland tags, which the officers recognized were generally issued to larger vehicles. The officers directed appellant to stop, then approached his vehicle. Appellant produced "a type of identification the officers had never seen before" and orally claimed diplomatic immunity. Noticing that appellant's identification did not appear to be authentic, the officers returned to their vehicle and confirmed that the name on the identification did not match any known diplomat. When the officers again approached appellant's vehicle, appellant rolled up the windows, began playing music loudly, and ignored the orders of the officers. When additional officers arrived on the scene, appellant continued to ignore the orders of the officers. When appellant rolled down his window to speak to an officer, one of the officers was able to reach through the window and grab appellant's arm. Appellant then stated that he had a gun; a second officer reached through the passenger side of the vehicle and confirmed that appellant had a revolver; a third officer broke through the driver's side rear window to help restrain appellant; and a fourth officer was able to take the revolver from the waist band of appellant's pants. The revolver was loaded with six rounds of ammunition.

At appellant's second trial, appellant did not contest the issue of operability. Neither party objected to the trial judge's instruction to the jury regarding the of-

fense of CPWL, in which the term "firearm" was defined as "a weapon *regardless of operability*, which will expel a bullet by the action of an explosive." Although at the time of trial the operability requirement had been removed from the offense of CPWL, at the time appellant was arrested the offense required proof that the weapon was operable.

## II. The First Trial
### A.

■ We review the trial court's admission of lay witness opinion testimony for abuse of discretion. *Bedney v. United States*, 684 A.2d 759, 766 (D.C.1996). Non-expert witnesses usually provide testimony that is not in the form of an opinion at all, but rather, is "simply part of [a] narrative of [their] own role in the events" leading up to an arrest. *Id.* at 767. However, non-expert witnesses may also express opinions "as long as those opinions are based on the witness' own observation of events and are helpful to the jury." *Carter v. United States*, 614 A.2d 913, 919 (D.C.1992) (citation omitted). "Whether an opinion is 'helpful to the jury' and hence admissible is a question entrusted to the sound discretion of the trial court." *Id.*

■ Officer Craig's testimony that "[b]ased on [his] experience these scales are used for—in these scenarios, weighing narcotics" does not amount to the expression of an expert opinion, as appellant alleges, but rather was simply part of the officer's narrative of his own role in the arrest and, as the trial judge recognized, "naturally fits in with why [the scale] was . . . seized." This testimony was based on Officer Craig's own observations and experience as a police officer. That the judge found that the officer's statement would be helpful to the jury in understanding why the scale was seized was not an abuse of discretion. We conclude that appellant

has failed to show that the trial court abused its discretion by admitting the lay witness testimony of Officer Craig.

### B.

■ "We review the trial court's rulings placing limitations on cross-examination for an abuse of discretion." *Bennett v. United States,* 876 A.2d 623, 632 (D.C. 2005) (citing *Roundtree v. United States,* 581 A.2d 315, 323 (D.C.1990)). "Although the opportunity to cross-examine witnesses regarding potential bias is inherent in the Sixth Amendment right to confrontation," it is not without limits, "[as] the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Van Ness v. United States,* 568 A.2d 1079, 1084 (D.C.1990) (internal quotation marks and citations omitted). "So long as some 'meaningful degree of cross-examination [has been] allowed in the first instance,' . . . the requirements of the Sixth Amendment are deemed to have been satisfied." *Id.* Thereafter, "it is within the discretion of the trial court to limit cross-examination to prevent inquiry into matters having little relevance or probative value." *Id.* (citations omitted).

■ We conclude that appellant has failed to show that the trial court abused its discretion by curtailing appellant's questioning of Officer Smith for potential bias. In particular, appellant has not shown that he was denied the opportunity to cross-examine Officer Smith on this theory. Nor has appellant demonstrated how, without a factual foundation for this line of questioning, the preclusion of further examination of Officer Smith's potential bias prejudiced him at trial.

### III. The Second Trial

■ We turn now to the issue of operability. Operability of a weapon can be established either "by direct evidence or [by] circumstantial evidence." *Price v. United States,* 813 A.2d 169, 173 (D.C. 2002) (citation omitted). A gun need not be test fired by police to prove operability. *Morrison v. United States,* 417 A.2d 409, 412–13 (D.C.1980). Operability can be inferred where appellant "affirmatively display[s] a belief that his weapon [i]s operable." *Price, supra,* 813 A.2d at 173; *see also Peterson v. United States,* 657 A.2d 756, 763 (D.C.1995). We concluded in *Key v. United States,* 587 A.2d 1072, 1074 (D.C. 1991), that operability was established where, in addition to testimony that the weapon was test fired, the evidence included "the testimony of the police officers that the gun was fully loaded with live ammunition when recovered."

■ The evidence presented at trial shows that appellant failed in his bizarre attempts to dismiss the police officers, first by claiming diplomatic immunity, and then by choosing to ignore the police officers' orders while he blared music from inside of his vehicle. Once appellant opened his window and the police officers were able to reach him, appellant announced that he was carrying a gun. The revolver that the police officers seized from the waist band of appellant's pants was fully loaded. We conclude, based on the totality of these circumstances, that there was legally sufficient evidence to submit this case to the jury.

Where, as here, appellant fails to object to the trial judge's instruction to the jury, our review of the instruction is for plain error. *See, e.g., Peterson, supra,* 657 A.2d at 762; *Green v. United States,* 948 A.2d 554, 558–59 (D.C.2008) (citing *United States v. Olano,* 507 U.S. 725, 731, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). To

prevail under plain error review, an appellant must show that the trial court's instruction was "(1) error, (2) that is plain or obvious, (3) that affected the appellant's substantial rights, and (4) that seriously affected the fairness, integrity or public reputation of judicial proceedings." *Green, supra,* 948 A.2d at 559 (citations omitted). In this case, both parties agree that the instruction given was improper, and as such, that the trial court committed an error that was plain, satisfying the first two prongs of the plain error standard.

 It is also not disputed that at the time this case was tried operability of the weapon was an element of the offense to be proven by the government. The trial judge instructed that it was not. Critically, this erroneous instruction took away the government's burden of proof on an essential element of the offense. *Cf. Myers v. United States,* 56 A.3d 1148, 2012 WL 4892846 (D.C.2012). Consistent with the third prong of the plain error standard, we conclude that, in the circumstances of this case, there is a reasonable probability of a different outcome if the jury had been properly instructed, and as to the fourth prong, our conclusion supports our responsibility to protect the fairness of judicial proceedings. *See generally Perry v. United States,* 36 A.3d 799 (D.C. 2011).

This case is somewhat unusual because, although we find the evidence sufficient, we conclude the instruction to the jury was significantly erroneous so as to satisfy the plain error standard. Accordingly, we vacate only appellant's CPWL conviction and conclude that appellant is entitled to a new trial. *See Greene v. Massey,* 437 U.S. 19, 25–26, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

Accordingly, the judgments of the trial court are hereby

*Affirmed in part, reversed in part, and remanded for further proceedings.*